DE LAVAL SEPARATOR COMPANY, a Corporation, Appellant, v. A. J. COLE and L. R. Cole, Partners Doing Business Under the Firm Name and Style of Cole Bros., Respondents.

(227 N. W. 186.)

Opinion filed October 22, 1929.

*Kvello & Adams,* for appellant.

*C. S. Ego,* for respondents.

BIRDZELL, J. This is an action for the purchase price of goods sold by the plaintiff to the defendants. In the trial court a judgment of dismissal and for costs was entered for the defendants. From this judgment the plaintiff appeals. The plaintiff is a manufacturer and distributor of cream separators and other articles used in dairying. The defendants are copartners engaged in selling hardware at Lisbon in this state. In 1928 the plaintiff and the defendants entered into an agency contract whereby the latter were designated as agents at Lisbon for handling the plaintiff's products. On January 7, 1928, the defendants ordered from the plaintiff five No. 16 golden anniversary cream separators and five cases one-gallon H. S. oil, amounting to $428.12. (This was net after allowing an eight per cent cash discount.) The order was accepted and shipment was directed under a bill of lading with a sight draft attached which was drawn for the net amount. The bill of lading with the draft attached, dated January 12th and payable to the order of the First National Bank of Lisbon, were sent to the bank and by it presented to the defendants on January 17th. The draft was payable in New York or Chicago exchange for the face amount plus exchange and collection charges of the payee. The defendants took up the draft by drawing a check on the First National Bank of Lisbon for the amount of the order plus fifty cents

charges and received the bill of lading. The Lisbon bank on the same day drew a check or draft, payable to the plaintiff, for the net amount of the order upon the First National Bank of Chicago, and sent the same to the plaintiff. On January 20, 1928, the plaintiff deposited the draft in the Mercantile Trust & Savings Bank of Chicago. On the same day and before the draft had been paid by the First National Bank of Chicago, the First National Bank of Lisbon closed. At the time of closing it had on deposit in the First National Bank of Chicago an amount which was more than sufficient to discharge the draft. Upon presentation, however, the draft was not paid on account of the closing of the Lisbon bank and it was returned to the plaintiff. The plaintiff made a claim against the receiver, but its claim was disallowed. The trial court determined that the First National Bank of Lisbon was the agent of the plaintiff for the purpose of collecting the sight draft and that the defendants had discharged their obligation for the purchase price of the goods by paying to the plaintiff's agent. Upon this appeal the plaintiff admits that the conclusions of the trial court would be warranted were it not for a special provision in the agency contract. The contract contains the following stipulation: "Any credit or acknowledgment given the agent for any check, bank draft or any other form of remittance shall be contingent upon the actual collection thereof by the company." The sole question for determination here is whether or not, in light of this provision, the defendants have discharged their obligation to pay for the goods.

The contract contains another provision whereby the purchases by the agents are subject to certain terms and conditions which are declared to be a part of the agreement. Under the heading of cash discounts, it is stipulated: "5 or more machines shipped at one time— 8% from net amount of invoice, cash with order or sight draft against bill of lading. . . ." Under the heading of settlement conditions there is this further stipulation: "Unless otherwise specifically provided, all settlements shall be in cash, cash meaning Chicago exchange or its equivalent, or in other words funds payable at par in Chicago." Following this, under the heading of cash discount conditions, there is this provision: "Inasmuch as all cash settlements are required to be made in Chicago exchange, sight drafts against bill of lading must be

paid promptly when presented, whether or not the purchases covered thereby may have reached destination, and are subject to addition of the local bank charge for collection and conversion into Chicago exchange."

The contract distinguishes a settlement by bill of lading with draft attached from a cash settlement and covers the conditions that must be met under the former to entitle the agent to the same discount. The settlement in question was not a cash settlement between the principal and the agents in which the latter remitted by a check or a bank draft. The stipulation relied upon by the appellant would clearly cover such a settlement. The principal here selected the mode of settlement and chose one which was recognized by the contract as entitling the agent to the same discount as a cash settlement. It selected a bank in the defendants' city as its collecting agent. It made the sight draft payable to this bank and intrusted it with the bill of lading. It did not look to the defendants for remittance but did look to its collecting agent, the bank. The defendants had no control over the remittance. They fulfilled their obligation to the plaintiff in full when they paid cash upon presentation of the draft. It is a matter of no consequence that in paying the draft they gave a check on the payee bank. Schafer v. Olson, 24 N. D. 546, 43 L.R.A.(N.S.) 762, 139 N. W. 983, Ann. Cas. 1915C, 653. It is as though they had drawn the money out and paid it over the counter. There is no stipulation in the agency contract that purports to make the agents guarantors of the solvency of collecting agents employed by the principal. The only language at all susceptible of such an interpretation is that wherein it is provided that credits given to the agent are contingent upon the actual collection of a "remittance." It must be borne in mind that this is contained in the contract between the principal and the agents, and, in the absence of circumstances indicating a broader application, it must be held to include only remittances by the agents to the principal and not to embrace the proceeds of collections which the principal authorizes others to make for it. The interpretation contended for by the appellant would make the agent the guarantor of a remittance over which he is given no measure of control. We are clearly of the opinion that the stipulation relied upon by the appellant is not applicable to a remit-

tance passing between the principal and a collecting agent employed by it.

The judgment appealed from is affirmed.

Burke, Ch. J., and Christianson, Nuessle, and Burr, JJ., concur.